IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| **EQUAL RIGHTS CENTER**<br>a not-for-profit corporation,<br>11 Dupont Circle, N.W., Suite 450<br>Washington, D.C., 20036 )<br><br>Plaintiff, )<br><br>vs. )<br><br>**WOODFIELD INVESTMENTS, LLC,**<br>c/o Registered Agent<br>Michael Underwood<br>11425 Horseman's Trail<br>Raleigh, NC 27613; )<br><br>**WF HIDDEN CREEK, LLC,**<br>c/o Registered Agent<br>Michael Underwood<br>11425 Horseman's Trail<br>Raleigh, NC 27613; )<br><br>**WF ELIZABETH II, LLC,**<br>c/o Registered Agent<br>Michael Underwood<br>11425 Horseman's Trail<br>Raleigh, NC 27613; )<br><br>and )<br><br>**WOODFIELD COLUMBIA PIKE**<br>**ACQUISITION COMPANY,**<br>c/o Registered Agent<br>CT Corp. System<br>4701 Cox Rd. Ste 301<br>Glen Allen, VA 23060 )<br><br>Defendants. ) | Civil Action No. _____<br><br>Hon._____<br><br><br>**COMPLAINT FOR INJUNCTIVE AND**<br>**DECLARATORY RELIEF, AND FOR**<br>**DAMAGES**<br><br><br>**JURY TRIAL DEMANDED** |

1.      Plaintiff, Equal Rights Center (the "ERC"), for its Complaint against Woodfield

Investments, LLC, WF Hidden Creek, LLC, WF Elizabeth II, LLC, and Woodfield Columbia

Pike, LLC ( collectively "Defendants" or "WOODFIELD"), alleges and states as follows:

2.      This action is brought by the ERC, by and through their counsel, to enforce the

Fair Housing Act, Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing

Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601-3619 (collectively the "Fair Housing

Act" or "FHA") and to enjoin and remedy ongoing and systematic violations of these civil rights

laws by WOODFIELD in the design, construction, control, management, operation and/or

offering for rent units in certain multifamily dwellings, including residential complexes in

Maryland, Virginia, and North Carolina.

3.      As described herein, WOODFIELD has discriminated against persons with

disabilities[1] in violation of the FHA by designing and/or constructing dwellings and places of

public accommodation that deny persons with disabilities the access to, and use of, these

facilities required under these federal civil rights laws.

4.      Pursuant to the FHA, every multifamily housing building containing four (4) or

more units built for first occupancy after March 13, 1991, is subject to the design and

construction requirements of the FHA ("covered multifamily dwellings").  For instance, the FHA

requires all ground floor units, and all units on any floor serviced by an elevator in a covered

multifamily dwelling ("covered units"), as well as "public use and common use" areas associated

with covered units, to contain certain features of minimum accessibility and adaptable design,

including, among other things:

a.      an accessible building entrance on an accessible route;

---

[1] While the Fair Housing Act uses the term "handicap" instead of the term "disability," the two terms have the same meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).  Other than quoting statutory language, the ERC uses the more generally favored term "disability."

b.  public-use and common-use areas that are readily accessible to, and usable by, individuals with disabilities;

c.  an accessible route into and through the dwelling;

d.  useable doors;

e.  light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

f.  reinforcements in bathroom walls that allow for the later installation of grab-bars; and

g.  usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

5.  The FHA also prohibits discrimination in the rental of a covered dwelling or otherwise making unavailable or denying a covered dwelling to an individual because of disability, 42 U.S.C. § 3604(f)(1), or discrimination in the terms, conditions, or privileges of a rental, or in the provision of services or facilities in connection with the rental, of a covered dwelling because of disability.  42 U.S.C. § 3604(f)(2).

6.  The U.S. Congress made clear that enforcement of these civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible and adaptable to people with disabilities. *See* U.S. House of Rep. Report on the FHAA, H.R. Rep. No. 100-711 (1988).  Congress declared that such barriers, even if not the product of invidious intent "can be just as devastating as intentional discrimination." H.R. Rep. No. 100-711 at 25 (1988).

7.  As described herein, WOODFIELD has engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of the FHA by designing, constructing, managing, owning, operating and/or offering for rent units in covered multifamily

3

dwellings and the common use and public use areas associated with those covered dwellings in such a manner as to deny persons with disabilities access to, and the use of, these facilities as required under these federal civil rights laws.

8.      As described herein, WOODFIELD has engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of the FHA by owning, operating, managing and/or offering for rent covered units in multifamily dwellings, and the common-use and public-use areas associated with those covered dwellings, that WOODFIELD knew or could have known, with the exercise of reasonable care, failed to provide the accessible and adaptable features required by the FHA for persons with physical disabilities. Consequently, WOODFIELD has made and is making dwellings unavailable to people with physical disabilities and/or has discriminated against them in the rental of these units, and/or in the terms, conditions, or privileges of the rental of dwellings and/or in the provisions of services or facilities in connection with the rental of dwellings in violation of the FHA.

## PARTIES AND STANDING

9.      The ERC is a non-profit corporation organized under the laws of the District of Columbia with its principal place of business at 11 Dupont Circle, N.W., Suite 450, Washington, D.C., 20036. The ERC was founded in 1983, by a group of inter-denominational clergy and community leaders to provide a multifaceted approach to civil rights issues, and to create an open society where equal opportunity for all is assured.

10.     Woodfield Investments, LLC is a limited liability company with its principal office located at 19583 Saratoga Springs Avenue, Ashburn, Virginia 20147. Woodfield Investments, LLC holds itself out in certain press releases as a "privately owned apartment development company." On information and belief, Woodfield Investments, LLC is engaged in the ownership, development, construction, and management of multifamily and mixed-use

4

apartment communities in the Mid-Atlantic and Southeastern United States including Maryland, Virginia, and North Carolina. Woodfield Investments, LLC maintains a publicly accessible website at http://www.Woodfieldinvestments.com.

11.     WF Hidden Creek, LLC is a limited liability company with its principal office located at 19583 Saratoga Springs Place, Ashburn, Virginia 20147. On information and belief, WF Hidden Creek, LLC is engaged in the ownership, development, construction and/or management of multifamily apartment communities in Maryland.

12.     WF Elizabeth II, LLC is a limited liability company with its principal office located at 19583 Saratoga Springs Place, Ashburn, Virginia 20147. On information and belief, WF Elizabeth II, LLC is engaged in the ownership, development, construction and/or management of multifamily apartment communities in North Carolina.

13.     Woodfield Columbia Pike Acquisition Company is a corporation with its principal office located at 270 Park Avenue, 7th Floor, New York, New York 10017. On information and belief, Woodfield Columbia Pike Acquisition Company is engaged in the ownership, development, construction and/or management of multifamily apartment communities in Virginia.

14.     On information and belief, defendants WF Hidden Creek, LLC, WF Elizabeth II, LLC, and Woodfield Columbia Pike Acquisition Company, are owned, in whole or in part, and controlled by defendant Woodfield Investments, LLC. Collectively, defendants WF Hidden Creek, LLC, WF Elizabeth II, LLC, and Woodfield Columbia Pike Acquisition Company operate as a common business enterprise that is conducted by and for the benefit of, in whole or in part, Woodfield Investments, LLC.

15.     Through design, construction, control, management, and/or ownership, WOODFIELD has been and/or is involved in the design, construction, operation, management and/or offering for rent of units in numerous covered multifamily housing complexes in

Maryland, Virginia, and North Carolina. WOODFIELD publicly represents that it is associated with each of these covered multifamily housing complexes. The ERC has identified, through on-site inspection, WOODFIELD publications, or other public records, WOODFIELD housing units and complexes that are subject to the FHA. For purposes of this complaint, all properties currently owned by WOODFIELD subject to the FHA are referred to as the "Current Properties," properties previously owned by WOODFIELD subject to the FHA are referred to as "Sold Properties," with all properties collectively referred to as "Subject Properties."

16.     As a result of WOODFIELD's unlawful conduct complained of herein, the ERC has standing because it has been damaged by the frustration of its overall mission of ensuring equal housing opportunities for and eliminating discrimination against people with disabilities, as described herein, and by having to divert its scarce resources that the ERC would have otherwise used to provide counseling, outreach, education, and referral services. Instead, the ERC has devoted substantial resources to identifying, researching, investigating, and counteracting WOODFIELD's discriminatory policies and practices.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 2201, and 42 U.S.C. §§ 3613(a). Further, this Court may exercise personal jurisdiction over WOODFIELD.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events and omissions giving rise to the claims herein occurred in this District, and a substantial part of the property that is the subject of this action is located in this District. Specifically, WOODFIELD's Hidden Creek Apartments property is located in Montgomery County, Maryland, and WOODFIELD's Palette at Arts District property is located

in Prince George's County, Maryland. Venue also is proper under 28 U.S.C. § 1391(b)(3), because WOODFIELD may be found in this District.

## FACTUAL AND LEGAL BACKGROUND

19.     The ERC became aware that many new multifamily housing complexes were being constructed in Maryland, Virginia, and North Carolina that did not include the federally required elements of accessibility. The ERC visited several WOODFIELD properties and discovered FHA violations in the design and construction of each of those properties.

20.     In 2011, 2012, and 2013 the ERC sent accessibility testers to each of the Subject Properties it has identified to date.

21.     The Subject Properties are subject to the prohibitions on discrimination set forth in 42 U.S.C. §§ 3604(f)(1)-(3) of the FHA because the properties include "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7), and were built for first occupancy after March 13, 1991. Moreover, by owning, operating, managing and/or offering for rent covered units in the Subject Properties after March 13, 1991, WOODFIELD is obligated to so in a nondiscriminatory manner within the meaning of the FHA, 42 U.S.C. §§ 3604(f)(1)-(2).

22.     Through this testing, the ERC identified at least one FHA violation, and in most cases multiple violations, at each of the Subject Properties. The frequency of these violations demonstrates that WOODFIELD has engaged in a pervasive pattern and practice of designing, constructing, controlling, owning, operating, managing and/or offering for rent covered units in violation of FHA accessibility design requirements. The ERC anticipates that further investigation and discovery will identify additional FHA violations at the Subject Properties.

23.     The following specific examples are illustrative of the FHA violations identified at WOODFIELD's Current Properties which demonstrate the defendants pattern and practice of designing and/or constructing properties without compliance with the requirements of the FHA:

7

**Hidden Creek Apartments**

24.     WOODFIELD's Hidden Creek Apartments property in Gaithersburg, Maryland (the "Hidden Creek" property) is a covered multifamily housing complex that consists of 300 units serviced by elevators, and was completed for first occupancy in 2012.  The ERC observed the following violations at Hidden Creek:

      a.     bathroom doorways that are too narrow to allow passage by persons using wheelchairs or other mobility aids;

      b.     walk-in closet doors that are too narrow to allow passage by persons using wheelchairs or other mobility devices; and

      c.     thresholds that act as barriers to persons using wheelchairs or other mobility aids.

Moreover, by continuing to own, operate, manage and/or offer for rent covered units at this multifamily dwelling without correcting these features, WOODFIELD has discriminated against; made covered dwellings unavailable; discriminated in the terms, conditions, or privileges of rental to; and discriminated in the provision of services and facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

**Palette at Arts District**

25.     WOODFIELD's Palette at Arts District property in Hyattsville, Maryland (the "Palette" property) is a covered multifamily housing complex that consists of 243 units, and was partially completed for first occupancy in 2013.  The ERC observed the following violations at Palette:

      a.     common-area bathroom has insufficient floor space for use by persons using wheelchairs;

8

> b.      ground-floor apartments that have insufficient bathroom floor space for
>         use by persons using wheelchairs; and
>
> c.      thresholds that act as barriers to persons using wheelchairs or other
>         mobility aids.

Moreover, by continuing to own, operate, manage and/or offer for rent covered units at this multifamily dwelling without correcting these features, WOODFIELD has discriminated against; made covered dwellings unavailable; discriminated in the terms, conditions, or privileges of rental to; and discriminated in the provision of services and facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

## Metro 808 Apartments

26.     WOODFIELD's 808 Apartments property in Charlotte, North Carolina (the "Metro 808" property) is a covered multifamily housing complex that consists of 237 units serviced by elevators, and was completed for first occupancy in 2011.  The ERC observed that at Metro 808, kitchens provide insufficient floor space for use by persons using wheelchairs. Moreover, by continuing to own, operate, manage and/or offer for rent covered units at this multifamily dwelling without correcting these features, WOODFIELD has discriminated against; made covered dwellings unavailable; discriminated in the terms, conditions, or privileges of rental to; and discriminated in the provision of services and facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

## Siena Park Apartments

27.     WOODFIELD's Siena Park Apartments property in Arlington, Virginia (the "Siena Park" property) is a covered multifamily housing complex that consists of 237 units

serviced by elevators, and was completed for first occupancy in 2010. The ERC observed the following violations at Siena Park:

      a.    entry doorways that are too narrow to allow passage by persons using wheelchairs or other mobility aids;

      b.    kitchens that provide insufficient floor space for use by persons using a wheelchair; and

      c.    thresholds that act as barriers to persons using wheelchairs or other mobility aids.

Moreover, by continuing to own, operate, manage and/or offer for rent covered units at this multifamily dwelling without correcting these features, WOODFIELD has discriminated against; made covered dwellings unavailable; discriminated in the terms, conditions, or privileges of rental to; and discriminated in the provision of services and facilities against people with disabilities in violation of 42 U.S.C. § 3604(f)(1)-(2).

     28.    The following specific examples relating to WOODFIELD'S Sold Properties are illustrative of WOODFIELD's pattern and practice of designing and/or constructing properties with FHA violations:

### Chancery Village at the Park Apartments

     29.    WOODFIELD's Chancery Village at the Park Apartments property in Cary, North Carolina (the "Chancery Village" property) is a covered multifamily housing complex that consists of 276 units, and was completed for first occupancy in 2009. The ERC observed that at Chancery Village, bathrooms have insufficient floor space for use by persons using wheelchairs.

### Gramercy Square at Ayrsley Apartments

     30.    WOODFIELD's Gramercy Square at Ayrsley Apartments property in Charlotte, North Carolina (the "Gramercy Square" property) is a covered multifamily housing complex that

consists of 369 units serviced by elevators, and was completed for first occupancy in 2009.  The ERC observed that at Gramercy Square, kitchens have insufficient floor space for use by persons using wheelchairs.

## Elizabeth Square Apartments

31.   WOODFIELD's Elizabeth Square Apartments property in Charlotte, North Carolina (the "Elizabeth Square" property) is a covered multifamily housing complex that consists of 267 units serviced by elevators, and was completed for first occupancy in 2009.  The ERC observed that at Elizabeth Square, kitchens have insufficient floor space for use by persons using wheelchairs.

## Woodfield Glen Apartments

32.   WOODFIELD's Woodfield Glen Apartments property in Raleigh, North Carolina (the "Woodfield Glen" property) is a covered multifamily housing complex that consists of 432 units, and was completed for first occupancy in 2008.  The ERC observed the following violations at Woodfield Glen:

   a.   common areas that do not have an accessible route for persons using wheelchairs to move about the space;

   b.   kitchens that provide insufficient floor space for use by persons using wheelchairs; and

   c.   thermostats and environmental control features that are not located in accessible locations.

## Windsor at Tryon Village Apartments

33.   WOODFIELD's Windsor at Tryon Village Apartments property in Cary, North Carolina (the "Windsor" property) is a covered multifamily housing complex that consists of 393

11

units, and was completed for first occupancy in 2007.  The ERC observed the following
violations at Windsor:

      a.     ground-floor apartments that are located on an accessible route and do not
            have an accessible entrance

      b.     common area bathroom that provides insufficient floor space for use by
            persons using wheelchairs;

      c.     ground-floor apartments with bathrooms that provide insufficient floor
            space for use by persons using wheelchairs; and

      d.     thresholds that act as barriers to persons using wheelchairs or other
            mobility aids.

### Pattern and Practice Among Subject Properties

34.     Upon information and belief, WOODFIELD participated in the design,
construction, ownership, management and/or offering for rent units in each of the Subject
Properties.  Moreover, these properties were designed and constructed seriatim by
WOODFIELD under the ultimate supervision and with the approval of WOODFIELD after
March 13, 1991.

35.     On information and belief, the Subject Properties were designed and constructed
under the ultimate supervision and with the approval of WOODFIELD for first occupancy after
March 13, 1991.  Many of the apartment units tested by the ERC share common design elements,
as evidenced in part by common floor plans published by WOODFIELD.  Common design
elements range from the use of common bathroom or kitchen designs, to virtually identical floor
plans in numerous complexes.  For example, WOODFIELD's Hidden Creek Apartments, Metro
808 Apartments, and Palette at Arts District properties are all designed by the same architect,

The Housing Studio, and exhibit virtually identical floor plans among many of the apartment units advertised on their respective websites.

36.     On information and belief, as demonstrated by the pervasiveness of the violations at the Subject Properties, WOODFIELD's design and construction practices have resulted in violations at each of the Subject Properties.  WOODFIELD's violations are ongoing and demonstrate a pervasive practice of systematic and continuous violations of the FHA by failing to design and construct the Subject Properties, including their public and common use areas, in accordance with the requirements of 42 U.S.C. § 3604 (f)(3)(C) and the applicable regulations.

37.     At least one of the Subject Properties that constitute part of WOODFIELD's pattern and practice of designing, constructing, owning, operating, managing and/or offering for rent inaccessible multifamily dwellings have been completed within two years of the filing of this Complaint.

38.     In carrying out the aforementioned actions, WOODFIELD acted intentionally and willfully, and with callous and reckless disregard of the FHA, as well as the rights of persons with disabilities to accessible housing.

## INJURY TO PLAINTIFF

39.     As a result of WOODFIELD's actions described above, ERC has been directly and substantially injured in that it has been frustrated in its mission to promote equal opportunities in housing and in carrying out the programs and services that it provides, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to persons either looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

40.    WOODFIELD's continuing discriminatory practices also have forced the ERC to divert significant and scarce financial and organizational resources to identify, research, investigate, and counteract WOODFIELD's discriminatory practices, and such practices have frustrated the ERC's efforts against discrimination – such as the ERC's efforts and programs to provide counseling, outreach, educational, and referral services – thereby causing the ERC to suffer a concrete and demonstrable injury.  These injuries began prior to the filing of this Complaint and are continuing.

41.    Until remedied, WOODFIELD's unlawful, discriminatory actions, will continue to injure ERC by inter alia:

   a.    interfering with efforts and programs intended to promote equal opportunity in housing;

   b.    requiring the commitment of scarce ERC resources, including substantial staff time and funding, to counteract WOODFIELD's discriminatory conduct, thus diverting those resources from the ERC's educational, outreach, and counseling activities and services;

   c.    frustrating its mission and purpose of promoting the equal availability of housing to all persons without regard to their membership in any protected category, including disability; and

   d.    injuring the rights and interests of the ERC's individual members who have disabilities by making the Subject Properties unavailable to them.

42.    A preliminary injunction preventing WOODFIELD from the sale, transfer, or rental of apartment units is essential to preserve the rights of the disabled while this action is pending.  Without this interim relief, the sale, transfer, or rental of noncompliant FHA-covered units irreparably harms persons protected from discrimination by discouraging such persons from the purchase or rental of these units.  There is no adequate remedy at law because

14

WOODFIELD's discriminatory conduct permanently deprives persons protected by the FHA from obtaining apartment units that WOODFIELD sells, transfers, or rents while this action is pending.

**FIRST CLAIM FOR RELIEF**
**Violations of the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)-(f)(2) and (f)(3)(C) by**
**WOODFIELD's Designing and Constructing the Subject Properties**

43.     Plaintiff adopts and realleges the allegations of Paragraphs 1 - 42 of this Complaint.

44.     Each of the Subject Properties were designed and constructed for first occupancy after March 13, 1991.  Each building located on the Subject Properties is a "dwelling" within the meaning of the FHA, 42 U.S.C. § 3602(b).

45.     The Subject Properties are comprised of nine apartment complexes, and contain more than 2,754 individual housing units.

46.     At the Subject Properties, the buildings of which are each comprised of four or more units, each of the ground-floor units in buildings without elevators, and all units in buildings with an elevator, are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A).  Each "covered unit" at the Subject Properties, and the public and common use areas at the Subject Properties, is subject to the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

47.     The ERC tested all nine Subject Properties and found at least one violation of the FHA, 42 U.S.C. § 3604(f)(3)(C) at every property.

48.     On information and belief, based on the violations identified at the Subject Properties, WOODFIELD repeatedly and continually has failed to design and construct the Subject  Properties so that, among other things:

a.   public-use and common-use portions are readily accessible to, and usable by, individuals with disabilities;

b.   covered units contain the following features of accessibility:

   (i)     an accessible route into and through the dwelling;

   (ii)    useable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space; and

   (iii)   thermostats and other environmental controls in accessible locations.

49.   Through its design, construction, control, ownership and/or management of the Subject Properties, WOODFIELD has:

a.   discriminated in the sale or rental of, otherwise made unavailable, or denied dwellings to persons because of their handicaps in violation of the FHA, 42 U.S.C. § 3604(f)(1);

b.   discriminated against persons because of their handicaps in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(2); and

c.   failed to design and construct dwellings in compliance with the requirements mandated by the FHA, 42 U.S.C. § 3604(f)(3), and the applicable regulations.

50.   The actions complained of constitute a continuing pattern and practice of repeated and continuing violations of the FHA in that WOODFIELD is engaged in a systematic and consistent discriminatory pattern and practice of designing and constructing covered multifamily dwellings in violation of the requirements of the FHA, and the applicable regulations.

51.    WOODFIELD's conduct described herein has been intentional, willful, and taken in disregard for the rights of others.

52.    As a result of WOODFIELD's wrongful conduct, the ERC has been injured by a discriminatory housing practice and is, therefore, an "aggrieved person," as defined by the FHA, 42 U.S.C. 3602(i)(1).

**SECOND CLAIM FOR RELIEF**
**Violations of the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)-(f)(2) by WOODFIELD's Ownership, Operation, Management, and/or Offering for Rent Units at the Subject Properties**

53.    Plaintiff adopts and realleges the allegations of Paragraphs 1 - 52 of this Complaint.

54.    Each of the Current Properties were designed and constructed for first occupancy after March 13, 1991.  Each building located on the Current Properties is a "dwelling" within the meaning of the FHA, 42 U.S.C. § 3602(b).

55.    The Current Properties are comprised of four apartment complexes, and contain 1,017 individual housing units, at least 774 of which are serviced by elevators.

56.    At the Current Properties, the buildings of which are each comprised of four or more units, each of the ground-floor units in buildings without elevators, and all units in buildings with an elevator, are "covered multifamily dwellings" within the meaning of the FHA. Each "covered unit" at the Current Properties, and the public and common use areas at the Current Properties, are subject to the accessibility requirements of the FHA.

57.    WOODFIELD, either with knowledge or with sufficient time to discover and correct violations of the FHA accessibility requirements at the Current Properties, has continued to own, operate, manage and/or offer for rent covered units.  The ERC tested all four Current Properties and found at least one violation of the FHA at every property.

58.    Through the actions and inactions described above, WOODFIELD has:

      a.    discriminated in the sale or rental of, otherwise made unavailable, or denied dwellings to persons because of their disabilities in violation of the FHA, 42 U.S.C. § 3604(f)(1); and

      b.    discriminated against persons because of their handicaps in the terms, conditions, privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(2).

59.    The actions complained of constitute a continuing pattern and practice of repeated and continuing FHA violations, in that, WOODFIELD has engaged in a systematic and consistent discriminatory pattern and practice of owning, operating, managing, and/or offering for rent covered units in violation of FHA requirements.

60.    WOODFIELD's conduct has been intentional, willful, and taken in disregard for the rights of others.

61.    As a result of WOODFIELD's wrongful conduct, the ERC has been injured by a discriminatory housing practice and is, therefore, an "aggrieved person," as defined by the FHA, 42 U.S.C. 3602(i)(1).

62.    Based on its past and ongoing practices, WOODFIELD is continuing with its practices of owning, operating, managing, and/or offering for rent covered units in covered multifamily dwellings, and common-use and public-use areas, that are in violation of the FHA. Pursuant to Section 3613(a)(1) of the FHA, the ERC is entitled to temporary and permanent injunctive relief, enjoining WOODFIELD, its officers, directors, employees, agents, successors, assigns and all other persons in active concert or participation with any of them from operating, managing and/or offering for rent any covered  unit and/or utilizing any common use or public use areas that fail to fully comply with the FHA and the applicable regulations.

18

**JURY TRIAL DEMAND**

63.    Plaintiff hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the Equal Rights Center, respectively prays that this Court grant it judgment in its favor, and enter an order against WOODFIELD as follows:

A.    Declaring, pursuant to 28 U.S.C. §§ 2201, that WOODFIELD's practices and actions, as alleged herein, violate the FHA and the applicable regulations;

B.    Granting a Preliminary Injunction enjoining WOODFIELD, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, from the sale, transfer, or rental of any Current Property in violation of the FHA for the duration of this action, or until the completion of such retro-fit alteration to covered units as may be ordered by the Court;

C.    Enjoining WOODFIELD, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, permanently from:

1.    constructing, including the acquisition of any building or construction permits, or certificates of occupancy, any covered multifamily housing and/or common areas that, in any way, fail to comply with the FHA and the applicable regulations;

2.    operating, managing and/or offering for rent, or continuing to rent, covered units in any multifamily housing and/or common use areas that, in any way, fail to comply with the FHA and the applicable regulations;

    3.      failing or refusing to bring the covered dwelling units, and the public use and common use areas, at the Current Properties into immediate compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), and the applicable regulations; and

    4.      failing or refusing to design, construct, own, operate, manage and/or offer for rent any covered unit in any multifamily dwellings in the future that are not in compliance with the FHA and the applicable regulations.

D.     Award such damages as would fully compensate the ERC for the injuries incurred as a result of WOODFIELD's discriminatory housing practices and conduct;

E.     Award such punitive damages as against WOODFIELD as are proper under the law;

F.     Award the ERC its costs and attorneys' fees incurred herein; and

G.     Award the ERC such other relief as this Court deems just and proper.

Dated this 9th day of April, 2013            Respectfully Submitted,

Douglas W. Baruch (D. Md. #12554)
Fried, Frank, Harris, Shriver
& Jacobson LLP
801 17th Street, NW
Washington, D.C. 20006
Tel: (202) 639-7000
Fax: (202) 639-7090

and

Robert M. Bruskin (D. Md. #17479)
Washington Lawyers' Committee
For Civil Rights and Urban Affairs
11 Dupont Circle, NW

Suite 400
Washington, D.C. 20036
Tel: (202) 319-1000
Fax: (202) 319-1010

Attorneys for Plaintiff